United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSEPH DOW,

                    Plaintiff,

   v.

LOWE'S HOME IMPROVEMENT, INC.,

                    Defendant.

_____/

No. C-05-3077 MMC

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; VACATING HEARING**

(Docket No. 31)

        Before the Court is the motion for summary judgment filed October 23, 2006 by

defendant Lowe's Home Improvement, Inc. ("Lowe's). Plaintiff Joseph Dow ("Dow") has

filed opposition to the motion; Lowe's has filed a reply. Having considered the papers filed

in support of and in opposition to the motion, the Court finds the matter appropriate for

decision without oral argument, see Civil L.R. 7-1(b), hereby VACATES the December 1,

2006 hearing, and rules as follows.

                                    **BACKGROUND**

        Dow alleges that, in 1994, when he was hired by Lowe's as a Commercial Sales

Specialist, he informed Lowe's that he had a disability that precluded him from performing

physical labor. (See Compl. ¶¶ 3-4.) Nonetheless, according to Dow, Lowe's, on October

11, 2004, assigned him to a job that required heavy physical labor. (See id. ¶ 5.) Dow

alleges he protested the assignment, and complained he was denied reasonable

1   accommodation.  (See id. ¶ 6.)  Dow alleges that on October 12, 2004, he reported to

2   Lowe's that he was in severe pain, and Lowe's sent him to a clinic, where he was advised

3   he could return to work in spite of his pain.  (See id. ¶ 7.)  Dow alleges he then went to a

4   hospital emergency room, where he received medical advice to remain away from work

5   until the pain subsided.  (See id. ¶ 8.)  Dow further alleges that although he reported his

6   condition to Blake Seelye ("Seelye"), Lowe's Human Resources Representative, Lowe's

7   thereafter, on October 28, 2004, terminated his employment because of his disability

8   and/or because he complained that he was denied reasonable accommodation.  (See id.

9   ¶¶ 9-10.)

10      Dow asserts claims against Lowe's for violation of the federal Americans with

11  Disabilities Act ("ADA"), the California Fair Employment and Housing Act ("FEHA"), and for

12  wrongful termination in violation of the public policy of the state of California.  (See id.

13  ¶¶ 14-18.)

14                          **LEGAL STANDARD**

15      Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as

16  to "all or any part" of a claim "shall be rendered forthwith if the pleadings, depositions,

17  answers to interrogatories, and admissions on file, together with the affidavits, if any, show

18  that there is no genuine issue as to any material fact and that the moving party is entitled to

19  judgment as a matter of law."  See Fed. R. Civ. P. 56(b), (c).  Material facts are those that

20  may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

21  248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a

22  reasonable jury to return a verdict for the nonmoving party.  See id.  The Court may not

23  weigh the evidence.  See id. at 255.  Rather, the nonmoving party's evidence must be

24  believed and "all justifiable inferences must be drawn in [the nonmovant's] favor."  See

25  United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989)

26  (en banc) (citing Liberty Lobby, 477 U.S. at 255).

27      The moving party bears the initial responsibility of informing the district court of the

28  basis for its motion and identifying those portions of the pleadings, depositions,

                                    2

1  interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the

2  absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317,

3  323 (1986).  Where the nonmoving party will bear the burden of proof at trial, the moving

4  party's burden is discharged when it shows the court there is an absence of evidence to

5  support the nonmoving party's case.  See id. at 325.

6       A party opposing a properly supported motion for summary judgment "may not rest

7  upon the mere allegations or denials of [that] party's pleading, but . . .  must set forth

8  specific facts showing that there is a genuine issue for trial."  See Fed. R. Civ. P. 56(e); see

9  also Liberty Lobby, 477 U.S. at 250.  The opposing party need not show the issue will be

10 resolved conclusively in its favor.  See Liberty Lobby, 477 U.S. at 248-49.  All that is

11 necessary is submission of sufficient evidence to create a material factual dispute, thereby

12 requiring a jury or judge to resolve the parties' differing versions at trial.  See id.

13                              **DISCUSSION**

14      Lowe's moves for summary judgment on all claims, on the ground that Dow's own

15 deposition testimony confirms both that he is not disabled within the meaning of the ADA

16 and FEHA and that he was terminated as a result of his failure to comply with Lowe's

17 attendance policy, not because of his disability.[1]

18      **A. ADA and FEHA Disability Discrimination Claims**

19          **1.  Legal Standard – ADA**

20      Under the ADA, "[n]o covered entity shall discriminate against a qualified individual

21 with a disability because of the disability of such individual in regard to . . . discharge of

22 employees, employee compensation, job training, and other terms, conditions, and

23 privileges of employment."  See 42 U.S.C. § 12112(a).  To state a prima facie case for

24 discrimination in violation of the ADA, Dow must show (1) he is a disabled person within the

25 meaning of the ADA, (2) he is a qualified individual, which requires that he be able to

26 _____

27      [1] Each party has submitted various objections to the evidence submitted by the
   opposing party.  To the extent the Court has, in the instant order, relied on any of such
28 evidence, the objections thereto are overruled.  To the extent the Court has not relied on
   such evidence, the Court does not reach the objections.

3

1    perform the essential functions of his job, with or without reasonable accommodation; and

2    (3) his employer either failed to reasonably accommodate his disability or subjected him to

3    an adverse employment action because of his disability.  See Allen v. Pacific Bell, 348 F.3d

4    1113, 1114 (9th Cir. 2003); Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir.

5    1999).

6          Under the ADA, "[t]he term 'disability' means, with respect to an individual, – (A) a

7    physical or mental impairment that substantially limits one or more of the major life activities

8    of such individual; (B) a record of such an impairment; or (C) being regarded as having

9    such an impairment."  See 49 U.S.C. § 12102(2).  The ADA defines "physical . . .

10   impairment" as, inter alia, "[a]ny physiological disorder, or condition, cosmetic

11   disfigurement, or anatomical loss affecting one or more of the following body systems: . . .

12   musculoskeletal[.]"  See 29 C.F.R. § 1630.2(h)(1).  "Major life activities" are defined as

13   "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing,

14   speaking, breathing, learning, and working."  See 29 C.F.R. § 1630.2(i).  A physical

15   impairment "substantially limits" a major life activity of an individual if he is "(i) [u]nable to

16   perform a major life activity that the average person in the general population can perform;

17   or (ii) [s]ignificantly restricted as to the condition, manner or duration under which [he] can

18   perform a particular major life activity as compared to the condition, manner, or duration

19   under which the average person in the general population can perform that same major life

20   activity."  See 29 C.F.R. § 1630.2(j)(1).

21         In determining whether an individual is substantially limited in a major life activity, the

22   court considers the following factors: "(i) [t]he nature and severity of the impairment; (ii)

23   [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term

24   impact, or the expected permanent or long term impact of or resulting from the impairment."

25   See 29 C.F.R. § 1630.2(j)(2).  With respect to the major life activity of working, an individual

26   is substantially limited if he is "significantly restricted in the ability to perform either a class

27   of jobs or a broad range of jobs in various classes as compared to the average person

28   having comparable training, skills and abilities"; "[t]he inability to perform a single, particular

4

1   job does not constitute a substantial limitation in the major life activity of working." <u>See</u> 29

2   C.F.R. § 1630.2(j)(3).

3                    **2. Legal Standard – FEHA**

4          Under FEHA, it is "an unlawful employment practice" for "an employer, because of

5   the . . . physical disability . . . of any person, . . . to discharge the person from employment,"

6   or "to fail to make reasonable accommodation for the known physical . . . disability of an . . .

7   employee." <u>See</u> Cal. Gov. Code § 12940(a), (m).  FEHA defines "physical disability" to

8   include, <u>inter alia</u>, a "physiological . . . condition" that affects the musculoskeletal system

9   and "[l]imits a major life activity." <u>See</u> Cal. Gov. Code § 12926(k).  Such limitation need not

10  be "substantial," however. <u>See</u> Cal. Gov. Code § 12926.1(c) ("[T]he definitions of 'physical

11  disability' and 'mental disability' under the law of this state require a 'limitation' upon a

12  major life activity, but do not require, as does the [ADA], a 'substantial limitation.'").  Rather,

13  a physiological condition "limits a major life activity if it makes the achievement of the major

14  life activity difficult." <u>See</u> Cal. Gov. Code § 12926(k)(1)(B)(ii).  The term "major life activity"

15  is "broadly construed and includes physical, mental, and social activities and working." <u>See</u>

16  Cal. Gov. Code § 12926(k)(1)(B)(iii).  "Working" is a major life activity, "regardless of

17  whether the actual or perceived working limitation implicates a particular employment or a

18  class or broad range of employments." <u>See</u> Cal. Gov. Code § 12926.1(c).

19         Under FEHA, an employee establishes a prima facie case of disability discrimination

20  by showing "(1) she suffered from a disability; (2) with or without reasonable

21  accommodation, she could perform the essential functions of the employment position she

22  held or desired; and (3) that she was subjected to an adverse employment action because

23  of her disability." <u>See</u> <u>Jenkins v. County of Riverside</u>, 138 Cal. App. 4th 593, 603 (2006).

24  "California courts look to federal judicial interpretations of the ADA in construing analogous

25  provisions of the FEHA[.]" <u>See</u> <u>Knight v. Hayward Unified School District</u>, 132 Cal. App. 4th

26  121, 130 (2005).

27                    **3. Evidence**

28                         **a. Existence of Disability**

                              5

1    Dow argues that he suffers from the following asserted physical impairment:  "a neck

2   condition resulting from the fusion of vertebrae in his neck."  (See Opp. at 14:19-20.)  Dow

3   asserts that such condition constitutes a disability because it "precludes him from engaging

4   in manual labor," (see id. at 12:12), and "limits his major life activity of being a master

5   plumber," (see id. at 16:5), which the Court construes as a contention that Dow is limited in

6   the major life activity of working.

7    Dow testified at deposition that, in October 1988, he injured his neck when he was

8   struck by a police car and that thereafter, in April 1989, he had a "cervical fusion" and

9   "bone graft in [his] lower back."  (See Dow Dep. at 25:19-21, 151:12-22, 153:11-13.)[2]

10  Other than post-operative cat scans and X-rays, and several follow-up doctor visits, Dow

11  received no subsequent treatment for his 1988 injury.  (See id. at 153:17-154:20.)  Dow

12  concedes he worked as a plumber for sixteen years after the above-referenced injury and

13  was able to perform his duties without any accommodation for his prior injuries.  (See id. at

14  25:22-26:4, 161:11-18, 162:5-7, 182:16-20.)  Dow acknowledged at deposition that he told

15  a doctor in 2005 that after his cervical fusion healed, he had "complete resolution of

16  symptoms and no residual restrictions or limitations."  (See id. at 359:20-361:4.)

17   Dow further testified that by 2004, he had a "desire not to" perform manual labor

18  anymore, and applied for a sales position at Lowe's.  (See id. at 26:7-9, 139:20-140:16,

19  150:1-23.)  Dow testified he decided to stop working as a plumber because "things ha[d]

20  become more painful," and his "range of mobility ha[d] become a lot limited."  (See id. at

21  182:21-183:9.)  Dow testified that, as of 2004, "[p]hysical and manual labor was becoming

22  increasingly difficult to the point of almost being impossible, and [he] suffered dearly for

23  doing heavy manual labor."  (See id. at 150:1-11.)  He conceded, however, that his

24  limitations were not severe enough to cause him to seek medical attention.  (See id. at

25  183:12-14.)

26   Dow is the sole witness with respect to the issue of whether he is disabled within the

27  ───────────────

28      [2] Portions of the Dow deposition appear at Exhibits A, B, and C of the Declaration of
    Y. Anna Suh, and Exhibits A and B of the Declaration of Gregory S. Walston.

1   meaning of the ADA and FEHA.  The Court recognizes that, at the summary judgment

2   stage, medical testimony is not required to establish a genuine issue of material fact as to

3   the impairment of a major life activity, and that "a plaintiff's testimony may suffice."  See

4   Head v. Glacier Northwest, Inc., 413 F.3d 1053, 1058 (9th Cir. 2005).  "[C]onclusory"

5   testimony, however, is "insufficient to raise a question of material fact"; to survive summary

6   judgment, sworn statements "supporting the existence of a disability must not be merely

7   self-serving and must contain sufficient detail to convey the existence of an impairment."

8   See id. at 1059.  Lowe's argues that Dow's testimony is too conclusory to raise a genuine

9   issue of material fact sufficient to defeat summary judgment.

10       Although Dow testified at deposition that, by 2004, it was becoming increasingly

11   difficult for him to perform "physical and manual labor," he fails to identify any particular

12   activity or job that he is unable to perform.  Indeed, Dow acknowledged that during the

13   entire period from 1988 to 2004, he was able to perform all duties of a plumber without

14   accommodation.  (See Dow Dep. at 25:22-26:4, 161:11-18, 162:5-7, 182:16-20.)  Dow

15   further conceded that "[h]eavy lifting is a part of everything you do in plumbing," and that he

16   was able to lift water heaters, boilers, bathtubs, toilets, and heavy tools.  (See id. at 191:17-

17   25, 357:8-358:17.)  Additionally, Dow acknowledged that he was able to "get down under

18   cabinets and crawl spaces to do the plumbing."  (See id. at 358:7-17.)

19       Without more specificity in Dow's testimony as to what he can and cannot do, a

20   reasonable trier of fact could not conclude that Dow is substantially limited in the major life

21   activity of working, within the meaning of the ADA; Dow provides no declaration by way of

22   elaboration.  See Head, 413 F.3d at 1059 (holding evidence supporting existence of

23   disability "must contain sufficient detail to convey the existence of an impairment").

24   Consequently, any attempt by a trier of fact to determine the degree of Dow's asserted

25   limitations, in order to ascertain whether he is "substantially limited," would be speculative.

26       Moreover, with respect to the requirement that Dow be "significantly restricted in the

27   ability to perform either a class of jobs or a broad range of jobs in various classes," the

28   Ninth Circuit has held that "a plaintiff must present specific evidence about relevant labor

markets to defeat summary judgment on a claim of substantial limitation of 'working.'" See Thornton v. McClatchy Newspapers, Inc., 261 F.3d 789, 795 (9th Cir. 2001) (affirming summary judgment for defendant where plaintiff "failed to present evidence of the jobs from which she was precluded and of the relevant labor markets for that class of jobs"); see also 29 C.F.R. § 1630.2(j)(iii)(2) (setting forth factors to be considered in determining whether individual is significantly restricted in ability to work).  Under the ADA, a plaintiff is required "to produce some evidence of the number and types of jobs in the local employment market in order to show that he is disqualified from a substantial class or broad range of such jobs."  See Thornton, 261 F.3d at 796 n.1 (internal quotation and citation omitted). Dow has submitted no such evidence.  Accordingly, the Court finds Dow has failed to submit sufficient evidence that he is substantially limited in the major life activity of working and, consequently, Dow has failed to raise a triable issue as to whether he is disabled, within the meaning of the ADA.

Dow has, however, made out a prima facie case of disability under FEHA.  As noted, the definition of disability under FEHA requires only a "'limitation' upon a major life activity," not a "substantial limitation," as required under the ADA.  See Colmenares v. Braemar Country Club, 29 Cal. 4th 1019, 1027 (2003) (citing Cal. Gov. Code § 12926.1(c)).  Under FEHA, as noted above, a physiological condition "limits a major life activity if it makes the achievement of the major life activity difficult."  See Cal. Gov. Code § 12926(k)(1)(B)(ii). The undisputed evidence before the Court is that Dow's condition made his work as a plumber "increasingly difficult" and "painful."  (See Dow Dep. 150:1-11, 183:12-14.) Additionally, under FEHA, "'working' is a major life activity, regardless of whether the actual or perceived working limitation implicates a particular employment or a class or broad range of employments."  See Cal. Gov. Code § 12926.1(c).  As Dow has testified that his neck condition made his work as a plumber difficult and painful, and such evidence is undisputed, the Court finds Dow has submitted evidence sufficient to establish a prima facie case, under FEHA, that he is limited in the major life activity of working. Consequently, Dow has raised a triable issue as to whether he is disabled, within the

8

1   meaning of FEHA.

2                    **b.  Asserted Failure to Accommodate**

3         Even assuming, arguendo, Dow has adequately set forth evidence of a disability

4   under both the ADA and FEHA, Dow nonetheless fails to raise a triable issue with respect

5   to failure to accommodate.

6         The ADA defines the term "discriminate" to include "not making reasonable

7   accommodations to the known physical or mental limitations" of an employee.  See 42

8   U.S.C. § 12112(b)(5)(A) (emphasis added).  Likewise, under FEHA, it is unlawful for an

9   employer "to fail to make reasonable accommodation for the known physical . . . disability

10  of an applicant or employee."  See Cal. Gov. Code § 12940(m) (emphasis added).  Lowe's

11  argues it is entitled to summary judgment on Dow's claim for failure to accommodate his

12  disability because the undisputed evidence shows that Dow did not request any

13  accommodation from Lowe's.

14        "'In general . . . it is the responsibility of the individual with the disability to inform the

15  employer that an accommodation is needed.'"  See Taylor v. Principal Financial Group,

16  Inc., 93 F.3d 155, 165 (5th Cir. 1996) (quoting 29 C.F.R. § 1630.9, App.); see also Cal.

17  Gov. Code § 12940(n) (emphasis added) (imposing duty on employer, "in response to a

18  request for reasonable accommodation by an employee," to engage in interactive process

19  with employee to determine reasonable accommodation).  Thus, "[t]o prove discrimination,

20  an employee must show that the employer knew of such employee's . . . limitation[s]," not

21  just that the employee has a disability.  See Taylor, 93 F.3d at 163-164 (distinguishing

22  between "an employer's knowledge of an employee's disability versus an employer's

23  knowledge of any limitations experienced by the employee as a result of that disability").

24  Accordingly, "[w]here the disability, resulting limitations, and necessary reasonable

25  accommodations, are not open, obvious, and apparent to the employer, . . . the initial

26  burden rests primarily upon the employee, or his health-care provider, to specifically

27  identify the disability and resulting limitations, and to suggest the reasonable

28  accommodations."  See id. at 165.

                                            9

1    The Court again turns to Dow's deposition testimony.  Dow testified that when he

2  applied for a job at Lowe's, he told Seelye that because he "had suffered a neck injury," he

3  "could no longer do manual labor, and [he] wanted to pursue a job in sales."  (See Dow

4  Dep. 23:2-24:8.)  Dow also interviewed with "Linno," and showed him "the scar on [Dow's]

5  neck," but did not testify that he told Linno that he had any limitations as a result of his neck

6  injury.  (See id. at 180:22-182:15.)  Dow testified he also interviewed with Chris Moreno

7  ("Moreno"), and that he told Moreno he "couldn't do any more heavy lifting," although Dow

8  acknowledged that he "did not state a numerical weight."  (See id. at 203:19-204:13.)

9  According to Dow, Moreno told him that the sales job for which Dow was applying did not

10  require heavy lifting.  (See id. at 205:1-206:1.)  Dow further testified, however, that Moreno

11  discussed the physical requirements of the job with him and, in particular, told him that he

12  would have to "handle and move items weighing up to 50 pounds without assistance."[3]

13  (See id. at 199:19-202:14 and Ex. 21.)

14    Dow testified that he signed the job description, that he believed he could perform

15  the stated requirements of the job, and that he did not tell anyone that he could not perform

16  them.  (See id. at 203:4-17, 206:6-11.)  Dow further acknowledged at deposition that he

17  signed a "post offer questionnaire" and stated therein that there were no physical limitations

18  that might preclude him from performing the job.  (See id. at 212:8-213:7.)  In response to a

19  request on the questionnaire that he list any accommodations he needed to perform the

20  job, Dow testified he responded "N/A," meaning "not applicable," because, Dow testified,

21  "heavy lifting was not a requirement of commercial sales as assured by Mr. Moreno."  (See

22  id. at 220:8-23 and Ex. 23.)[4]  In September 2004, Dow was offered a commercial sales

23  position at Lowe's.  (See id. at 20:1-17 and Ex. 2.)  Dow acknowledged that when he was

24

25    [3] Dow acknowledged that Moreno also told Dow that the job requirements included
26  "mov[ing] objects up to and exceeding 200 pounds with reasonable accommodations."
   (See id.)

27    [4] The document appears to have the word "None" handwritten over "N/A."  (See Dow
28  Dep. Ex. 23.)  As Dow contends he wrote only "N/A," the Court accepts such testimony for
   purposes of the instant motion.

10

1   being trained, he was told that if a customer asked him to do something that was not part of

2   his job, he should "[p]ick up the phone" and page the appropriate employee.  (See id. at

3   235:3-15, 236:15-237:6.)  Thus, although the evidence shows that Dow expressed

4   concerns to Lowe's with respect to his engaging in heavy lifting, it is undisputed both that

5   (1) Dow was told heavy lifting was not part of his job in commercial sales and (2) Dow

6   requested no accommodations in order to perform the stated requirements of the job.

7       Dow presents no evidence that he was asked to perform heavy lifting as part of his

8   job in commercial sales.  Rather, as Dow testified, his training as a commercial sales

9   specialist was interrupted when the employee who was training him had to leave work due

10   to a death in the family.  (See Dow Dep. at 35:19-36:13, 267:9-10.)  On the date of his

11   injury, October 11, 2004, Dow told "Ron," the operations manager, that he had not received

12   enough training to work as a commercial sales specialist and asked Ron what he should

13   do, at which time Ron asked Dow to assist "Adam," the head of the lumber department,

14   because Adam was shorthanded.  (See id. at 43:14-44:1, 272:14-16.)  Dow conceded at

15   deposition that Ron did not know what work Adam would ask him to perform.  (See id. at

16   266:21-24.)

17       As related by Dow, Adam asked Dow to help him load concrete bags, as well as

18   drywall and cinder blocks, into customers' cars; Dow testified that the concrete bags

19   weighed 80 pounds, i.e., more than the 50 pounds he acknowledged, when he signed his

20   job description, he was able to lift without assistance.  (See id. at 44:7-21, 45:9-24.)  Dow

21   agreed to help Adam, and thereafter was injured.  (See id. at 44:7-13, 48-16-24.)  Dow

22   acknowledged, at deposition, however, that Adam was unaware of Dow's neck condition at

23   the time he asked Dow to assist him, that Dow did not tell Adam he could not do the

24   assigned tasks, and that Dow did not ask for any accommodation.  (See id. at 269:2-

25   270:12.)  Dow has submitted no evidence that Adam was otherwise aware of any such

26   condition or need.

27

28       In sum, the evidence is undisputed that (1) Dow did not request accommodations to

11

1  assist him in performing the duties of his job in commercial sales, and, indeed, he did not

2  need any such accommodations; (2) Ron was unaware, at the time he asked Dow to help

3  Adam, what type of work Adam would assign; (3) Adam was unaware of Dow's limitations

4  when he asked Dow to assist him in loading customers' cars; and (4) Dow did not request

5  any accommodations from Adam.

6        Accordingly, assuming, <u>arguendo</u>, Dow has a disability, and that an aberrant one-

7  time work assignment can ever form the basis of a "failure to accommodate" claim, Dow

8  has not raised a triable issue of material fact as to whether Lowe's failed to accommodate

9  such disability in violation of the ADA or FEHA.

10                          **c. Reason for Termination**

11        Dow, in his opposition, states that "[t]he only real question here is whether there is

12  sufficient evidence for a jury to conclude that plaintiff was fired because of his disability."

13  (<u>See</u> Opp. at 12:26-27.)  Accordingly, the Court hereby turns to Dow's claim of

14  discriminatory termination.  Lowe's argues the undisputed evidence shows Dow was

15  terminated as a result of his failure to comply with Lowe's attendance policy, and not

16  because of any disability.

17        If a plaintiff demonstrates a prima facie case of disability discrimination, "the burden

18  then shifts to [the] defendant[ ] to rebut the presumption of discrimination by coming

19  forward with evidence that the plaintiff was [terminated] for a legitimate, nondiscriminatory

20  reason.  If the defendant does so, the burden then shifts back to the plaintiff[ ] to

21  demonstrate that the proffered reason was not the true reason for the decision or that it

22  encompassed unjustified consideration of the handicap itself, i.e., that the articulated

23  reason is a pretext."  <u>See</u> <u>Smith v. Barton</u>, 914 F.2d 1330, 1340 (9th Cir. 1990).

24        Again, the relevant evidence is found in Dow's deposition.  On September 25, 2004,

25  Dow began a five-day orientation for new employees at Lowe's.  (<u>See</u> <u>id</u>. at 27:8-13, 254:7-

26  8.)  Dow testified that during the orientation, he received and read the New Employee

27  Orientation Guide ("Guide") provided by Lowe's.  (<u>See</u> <u>id</u>. at 253:1-25, 260:18-25 and Ex.

28  28.)  The Guide contains an attendance policy, pursuant to which an employee is required

to "notify the Manager on Duty prior to [the employee's] reporting time for each day of absence," and, after being absent for three consecutive days, "to provide Lowe's with a doctor's statement/written documentation for all future absences." (See id. Ex. 28 at D0223.)  The Guide further provides: "If you are going to be absent or late, you are required to call the Manager-On-Duty. . . . If we do not hear from you by the beginning of the third consecutive workday, we will assume that you have resigned your position."  (See id.)

As noted, Dow's training as a commercial sales specialist was interrupted when the employee who was training him had to leave work due to a death in the family.  (See Dow Dep. at 35:19-36:13, 267:9-10.)  As further noted, Dow, on October 11, 2004, was asked to help out in the lumber department and injured himself while assisting Adam in loading concrete bags, drywall, and cinder blocks into customers' cars.  (See id. at 44:7-21, 45:9-19.)  In particular, Dow testified that between 10:00 and 11:00 that morning, he "felt something pop" in his neck, "felt a severe pain go through the left side" of his neck, paused a moment, and then continued working.  (See id. at 48:16-49:24.)  Dow testified that he did not go to work the next day because he "was in bad pain," (see id. at 54:15-20), and that he called Seelye and was told to "come in and fill out a workers' compensation form."  (See id. at 55:15-17.)  Dow further testified that he went to Lowe's, filled out the form, and expressed concern about being terminated; Seelye reassured Dow that he shouldn't worry about being fired, and instructed him to see a Dr. Sandusky at U.S. Healthworks.  (See id. at 55:18-56:20.)  Dow acknowledges that Dr. Sandusky examined him and told him that he could return to work, with a four-day period of restrictions on lifting, pulling, pushing, and driving.  (See id. at 64:12-14, 281:19-282:22 and Ex. 34.)

The next day, however, Dow did not return to work, because he "disagreed with the doctor."  (See id. at 64:21-22.)  Instead, Dow called Seelye, who instructed him to return to U.S. Healthworks to be re-evaluated.  (See id. at 65:3-67:2.)  Dow returned to U.S. Healthworks on the third day after his injury; Dr. Sandusky confirmed her original diagnosis, and instructed Dow to return to work immediately.  (See id. at 67:18-69:5, 288:9-18 and Ex.

13

1   36.)  Dow concedes he did not return to work.  (See id. at 69:3-7.)

2        Instead, Dow told Seelye that he wanted to go elsewhere for treatment, and Seelye

3   again told him to return to U.S. Healthworks;[5] when Dow was informed that no

4   appointments were available that day or the next day, he went to the emergency room at

5   Seton Medical Center ("Seton").  (See id. at 70:8-71:4.)  According to Dow, when a Seton

6   admissions employee called Seelye to obtain Dow's workers' compensation number,

7   Seelye told Dow to leave the hospital and return to U.S. Healthworks.  (See id. at 72:9-21.)

8        Dow never returned to work.  (See id. at 15-21.)  He testified that it was impossible

9   to work given his level of pain, that he had hoped to see a spinal expert, and that until he

10  did so, he had no definite date on which he intended to return to work.  (See id. at 348:10-

11  25, 293:12-19.)  Dow further testified that after October 12, he made "between six and eight

12  calls informing [Lowe's] that [he] would be staying out of [his] own accord and that [he] was

13  trying to see another doctor."[6]  (See id. at 290:2-23.)  Of those six to eight calls, he spoke

14  to Seelye "three to four times"; Seelye told Dow that he "had been returned to work by Dr.

15  Sandusky," and repeatedly instructed Dow to return to U.S. Healthworks.  (See id. at 293:3-

16  19.)  Dow never returned to U.S. Healthworks.  (See id. at 289:23-290:1.)  Dow conceded

17  at deposition that he was away from work from October 12 through October 27, that he did

18  not submit a doctor's statement or other written documentation explaining his absence, and

19  that his "absences were not approved and excused by Lowe's."  (See id. at 296:18-297:5.)

20       On October 27, 2004, Dow received a telephone call notifying him that he had been

21

22  _____

    [5] Dow testified that Seelye previously had told him that although Dr. Sandusky had
23  ordered Dow back to work, Lowe's would "get [Dow] looked at again" if Dow was concerned
    about returning to work.  (See Dow Dep. 66:15-67:2.)

24       [6] Dow testified he could not "remember specific days" on which he left messages,
    but recalled that he "talked to Ruben Young [in Human Resources] twice," spoke to "a
25  gentlemen by the name of K.D." and "a girl who was working in the phone center or phone
    bank," and also spoke to Seelye.  (See id. at 290:15-23.)  Dow testified that when he called
26  Ruben Young, he asked to speak to Seelye, and that Young told him Seelye was not
    available and asked Dow to call back.  (See id. at 291:18-292:19.)  With respect to the
27  phone call to K.D., Dow testified he "left a message with him to please inform [Seelye] that
    [Dow] would not be in."  (See id. at 290:24-291:14.)  With respect to the message with the
28  woman at the phone bank, Dow testified he left a message that he would "not be in" and
    that he was "staying out of [his] own accord due to the pain."  (See id. at 291:15-18.)

1   terminated.  (See id. at 296:12-17.)  In a letter dated October 27, 2004, Seelye informed

2   Dow that his employment "was terminated effective 10/27/2004 for failure to show up for

3   work or contact any member of [the] senior management team regarding [his] absence

4   from work."  (See id. at 88:5-12 and Ex. 12.)  In that letter, Seelye stated he had not heard

5   from Dow since October 18, and that "Lowe's policy is to terminate any employee who has

6   not shown up for work or contacted a salaried manager after three days."   (See id. Ex. 12.)

7          The Court finds Lowe's has set forth a legitimate non-discriminatory reason for

8   terminating Dow, specifically, his non-compliance with Lowe's attendance policy, which

9   required him to call Lowe's management every day he was absent from work, and to supply

10  a doctor's statement or other written documentation of the reason for his failure to attend

11  work.  (See Dow Dep. Ex. 28 at D0223 (attendance policy); Ex. 12 (termination letter).)

12         The Court further finds that Dow has failed to submit evidence sufficient to raise a

13  triable issue of material fact as to whether the proffered reason for his termination was

14  pretextual.  See Dark v. Curry County, 451 F.3d 1078, 1085 (9th Cir. 2006) (holding plaintiff

15  must submit "specific, substantial evidence" of pretext to survive summary judgment).  Dow

16  argues the proffered reason for his termination is pretextual because managers would not

17  speak with him when he called Lowe's after his termination, and his calls were not returned.

18  (See Opp. at 15:14-16.)  Dow submits no evidence, however, that he requested that

19  anyone return the calls he made to Young, K.D., or the woman at the phone center.  Dow

20  also concedes that he spoke to Seeley "three to four times" after October 12, (see Dow

21  Dep. 293:3-6), and thus concedes that he was able to speak regularly with management.

22         Moreover, Dow submits no evidence that he complied with Lowe's attendance

23  policy.  Dow conceded at deposition, that between October 12 and October 27, a period of

24  eleven workdays, he made, at most, "between six and eight calls" to Lowe's; Dow thus

25  concedes he did not call every day, as required by defendant's attendance policy.  (See

26  Dow Dep. 290:2-23.)  Dow further concedes he was aware he was required to notify the

27  manager on duty for each day of absence, and to provide Lowe's with a doctor's statement

28  after he was absent for three consecutive days, that he did not do so, and that his absence

15

1    was not approved and excused by Lowe's.  (See id. at 295:19-296:8, 296:18-297:5.)[7]

2    Finally, Dow acknowledges that on the occasions he spoke to Seelye, Seelye "kept

3    instructing [Dow] to go back down to the U.S. Healthworks" and cautioned Dow that he

4    "had been returned to work by Dr. Sandusky." (See id. at 292:20-293:19.)  Dow concedes

5    that he never returned to U.S. Healthworks, and never submitted a note from any doctor or

6    any other written confirmation of his asserted inability to work.  (See id. at 289:23-290:1,

7    296:18-297:5.)  In essence, Dow concedes he was insubordinate by refusing to comply

8    with Seelye's directions.  The Court finds Dow has not raised a triable issue of material fact

9    with respect to pretext.

10    Accordingly, the Court will GRANT defendant's motion for summary judgment with

11    respect to Dow's ADA and FEHA disability discrimination claims.

12    **B. ADA and FEHA Retaliation Claims**

13    Lowe's moves for summary judgment on Dow's claim of retaliation in violation of the

14    ADA and FEHA, on the ground Dow has submitted no evidence that his complaints were a

15    motivating factor in his termination.  Lowe's argues Dow was terminated because of his

16    failure to comply with Lowe's attendance policy, not because he requested accommodation

17    for a disability.  Dow has set forth no argument in opposition to defendants' motion for

18    summary judgment with respect to his retaliation claims.

19    **1.  Legal Standard – ADA**

20    Under the ADA, "[n]o person shall discriminate against any individual because such

21    individual has opposed any act or practice made unlawful" under the ADA.  See 42 U.S.C.

22    § 12203(a).  "To establish a prima facie case of retaliation under the ADA, an employee

23    must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse

24    employment action; and (3) there was a causal link between the two."  Pardi v. Kaiser

25

26    [7] The Court notes that Dow, in his deposition, testified that his prior attorney, during the course of the instant litigation, gave him a different attendance policy, which, according

27    to Dow, provided that if an employee is "out for three consecutive days and doesn't call in, that the only viable excuse for that is they must have good cause." (See Dow Dep. 297:9-

28    22.)  No such policy has been submitted to the Court, however, and, as discussed above, the only policy submitted is to the contrary.

1   Foundation Hospitals, 389 F.3d 840, 849 (9th Cir. 2004).  "[T]he ADA outlaws adverse

2   employment decisions motivated, even in part, by animus based on a plaintiff's disability or

3   request for accommodation – a motivating factor standard."  Head, 413 F.3d at 1065.

4       "If the employee establishes a prima facie case, the employee will avoid summary

5   judgment unless the employer offers legitimate reasons for the adverse employment action,

6   whereupon the burden shifts back to the employee to demonstrate a triable issue of fact as

7   to whether such reasons are pretextual."  See Pardi, 389 F.3d at 849.

8       **2.  Legal Standard – FEHA**

9       Under FEHA, it is an unlawful employment practice for an employer to "discriminate

10  against any person because the person has opposed any practices forbidden" under

11  FEHA.  See Cal. Gov. Code § 12940(h).  To establish a prima facie case of retaliation

12  under FEHA, "the plaintiff must show that he engaged in a protected activity, his employer

13  subjected him to adverse employment action, and there is a causal link between the

14  protected activity and the employer's action."  See Iwekaogwu v. City of Los Angeles, 75

15  Cal. App. 4th 803, 814 (2000).  The requisite causal link is shown if the plaintiff's protected

16  activity "was a motivating factor in the employment decision."  See Caldwell v. Paramount

17  Unified School District, 41 Cal. App. 4th 189, 206 (1995); BAJI 12.10.

18      **3.  Evidence**

19      As noted, Dow does not mention his retaliation claims in his opposition.

20  Consequently, he has not identified the protected activity that is the basis of his retaliation

21  claim.  Dow has cited no evidence that he ever complained to Lowe's, prior to his

22  termination, that he was being discriminated against on the basis of disability.  Accordingly,

23  Dow has not established a prima facie case of retaliation.

24      Even assuming, arguendo, that Dow has established a prima facie case of

25  retaliation, Lowe's has set forth a legitimate non-discriminatory reason for terminating Dow,

26  specifically, his failure to comply with Lowe's attendance policy, as discussed above.  (See

27  Dow Dep. Ex. 28 at D0223 (attendance policy); Ex. 12 (termination letter).)  Dow has

28  submitted no evidence suggesting that the proffered reason for his termination was

17

1    pretextual.

2         Accordingly, the Court will GRANT defendant's motion for summary judgment on

3    Dow's claims for retaliation in violation of the ADA and FEHA.

4         **C.  Wrongful Termination in Violation of Public Policy**

5         Although "an employment contract is generally terminable at either party's will,"

6    California courts "have created a narrow exception to this rule by recognizing that an

7    employer's right to discharge an at-will employee is subject to limits that fundamental public

8    policy imposes."  See Green v. Ralee Engineering Co., 19 Cal. 4th 66, 71 (1998).   To

9    establish a claim for wrongful termination in violation of public policy, Dow must show that

10   he was terminated in violation of a policy that is (1) "fundamental," (2) "beneficial for the

11   public," and (3) embodied in a statute, constitutional provision, or administrative regulation.

12   See Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1256 (1994); Green, 19 Cal. 4th at

13   79-80.

14        Here, Dow's claim for wrongful termination in violation of public policy is based

15   entirely on asserted violations of the ADA and FEHA.  Because Dow has not established a

16   triable issue of material fact with respect to his ADA and FEHA claims, his claim for

17   wrongful termination in violation of public policy likewise fails.

18                                    **CONCLUSION**

19        For the reasons set forth above, defendant's motion for summary judgment is

20   hereby GRANTED.

21        **IT IS SO ORDERED.**

22   Dated: December 5, 2006                    _____
                                                MAXINE M. CHESNEY
23                                              United States District Judge

24

25

26

27

28

                                              18